**F I L E D**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

JACOB DEAN PAHCHEKA,

      Petitioner - Appellant,

v.

RON WARD, Warden,

      Respondent - Appellee.

No. 04-6084
(D.C. No. CV-03-421-T)
(W. D. Okla.)

**ORDER AND JUDGMENT** *

Before **BRISCOE** , **ANDERSON** , and **BRORBY** , Circuit Judges.

After examining the briefs and appellate record, this panel has determined

unanimously that oral argument would not materially assist the determination of

this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is

therefore ordered submitted without oral argument.

Petitioner-appellant Jacob Dean Pahcheka pled guilty in Oklahoma state

court to one count of drug trafficking, for which he was sentenced to a term of

---

* This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

fifteen years.  He did not move to withdraw his plea within the time period provided, but instead later filed an application for post-conviction relief which was denied by the state district court.  This denial was affirmed by the Oklahoma Court of Criminal Appeals (OCCA).  Mr. Pahcheka thereafter filed the present petition for writ of habeas corpus in federal district court, raising issues involving the jurisdiction of the state district court, the voluntariness of and factual basis for his plea, and ineffective assistance of counsel in connection with withdrawal of the plea.  The district court denied his habeas petition, and he appealed to this court.

Mr. Pahcheka has filed a pro se opening brief raising several issues.  We granted him a certificate of appealability (COA) limited to a single issue: whether his counsel violated his Sixth Amendment right to effective assistance of counsel by failing to consult with him about an appeal.      *See* 28 U.S.C. § 2253(c) (requiring COA before appeal can proceed in this court).  The federal public defender was appointed to represent Mr. Pahcheka and has filed a brief addressing this issue.

FACTS

**1.  The underlying offense**

Mr. Pahcheka was arrested during a raid on a residence owned or occupied by Ronald Wahkinney in Comanche County, Oklahoma.  Officers of the

Comanche County Sheriff's Department executing a search warrant at the residence found equipment and supplies consistent with a methamphetamine laboratory. They arrested the three adults, Mr. Pahcheka, Mr. Wahkinney, and Randall Gowen, who were present at the residence at the time of the raid. While they did not find any measurable quantity of methamphetamine in the residence, officers found a jar containing approximately 1.25 liters of a substance initially identified as a methamphetamine precursor in a truck that Mr. Gowen had driven to the residence.

## 2. Guilty plea

The state initially charged Mr. Pahcheka and Mr. Wahkinney with manufacturing methamphetamine, and Mr. Gowen with possession of methamphetamine and a methamphetamine precursor. After laboratory test results revealed that the jar found in Mr. Gowen's truck actually contained 1.25 liters of finished methamphetamine, the indictment was amended to charge Mr. Gowen with trafficking in methamphetamine as an alternative to the possession charges. Mr. Pahcheka and Mr. Wahkinney were also charged in amended indictments with trafficking in methamphetamine.

At the preliminary hearing, Mr. Pahcheka challenged the state court's jurisdiction over his case. He argued that he was an Indian and that Mr. Wahkinney's house was on Indian land. An employee from the county

-3-

assessor's office testified for the defendants that according to the county's records, the house was on Indian land. The parties agreed to continue the preliminary hearing until the Bureau of Indian Affairs (BIA) had provided a formal opinion concerning the land's status.

At the resumed preliminary hearing, the prosecution submitted a letter from the BIA certifying that the land was not held in Indian trust status. Attached to the letter was a 1972 document entitled "Deed to Restricted Indian Land," which reflected that two individuals had transferred the land to the Comanche Housing Authority. Finding that the BIA's letter was "as good as or better than the county records," State Court R., Vol. II at 114, the state court concluded that the land was not Indian land, and that it therefore had jurisdiction over the case.

Mr. Pahcheka subsequently entered a guilty plea to one count of trafficking in methamphetamine. The state district court accepted his plea and sentenced him to fifteen years in prison. Both Mr. Pahcheka and his attorney signed a standard form entering the guilty plea which notified Mr. Pahcheka that in order to appeal from his conviction, he would be required to file a written application to withdraw his plea within ten days. No such application was filed.

### 3. Alleged attempts to withdraw guilty plea

Mr. Pahcheka contends that he made several attempts to contact his attorney during the ten-day period, to discuss withdrawal of his guilty plea and an

appeal. The federal district court conducted an evidentiary hearing concerning

Mr. Pahcheka's attempts to contact his attorney after his guilty plea.[1]

Based on the testimony at the hearing, the district court found that

> Petitioner and his trial counsel did not speak or actually communicate with each other at any time following the entry of Petitioner's guilty plea on October 30, 2001. Petitioner alleges that he attempted to place two collect telephone calls to his trial counsel on the fourth and fifth days after he entered his guilty plea. The collect calls were not accepted by his attorney. [Footnote: "Petitioner's trial counsel testified that he has a general policy of refusing all collect telephone calls from indigent clients due to the unreimbursable costs associated with the calls."] Petitioner further alleges that he placed a letter, addressed to his trial counsel, in the Comanche County Jail's internal mail system on the eighth day following the entry of his guilty plea. According to Petitioner, the letter requested trial counsel come visit him to discuss his guilty plea, the statutory language of the crime to which he pled and his ability to receive "earned credits." It is undisputed that Petitioner's trial counsel never received the letter. [Footnote: "As noted above, Petitioner allegedly sent a similar letter to the trial judge through the same internal courthouse delivery system. It is undisputed that the trial judge did not receive the letter from Petitioner."]

R. Vol. II, doc. 47, at 8.

### 4. State collateral review proceedings

As noted, Mr. Pahcheka filed an application for post-conviction relief in

Oklahoma state district court. In this petition, he raised three issues. He

---

[1] Our review in this case is somewhat hampered by the fact that the transcript of this evidentiary hearing appears nowhere in the appellate record. Instead, both parties cite to the district court's factual summary of the hearing, contained in its order denying habeas relief. This being the case, we also will rely on the district court's factual findings.

contended that the state court had lacked jurisdiction to convict him, because he was an Indian and the premises where the methamphetamine was found was Indian land. He argued that the district court and his attorney improperly failed to respond to his letters seeking to withdraw his guilty plea. Finally, he asserted that the district court had failed to establish a sufficient factual basis to support his guilty plea to the crime of drug trafficking. The district court summarily denied Mr. Pahcheka's petition. On appeal, the OCCA affirmed the denial, stating as follows:

> In an order filed December 4, 2002, the District Court denied Petitioner's post-conviction application. The trial judge found Petitioner "is not entitled to any Post-Conviction relief", that Petitioner failed to show he was denied effective assistance of counsel and that he did not raise any issues which could not have been raised earlier.
>
> The provisions of 22 O.S. 2001, § 1080 [authorizing post-conviction relief], are not a substitute for a direct appeal. Permitting one to   by-pass or waive a timely and direct appeal and proceed under 22 O.S. 2001, § 1080, without supplying sufficient reason erodes the limitations and undermines the purpose of the statutory direct appeal. Petitioner's application to this Court fails to articulate sufficient reason [sic] explaining his failure to timely file an appeal of his conviction. The remaining issues have been waived.

R., Vol. I, doc. 15, ex. "D" at 1-2 (case citations omitted).

ANALYSIS

The district court denied Mr. Pahcheka's application on the merits, notwithstanding the state's argument that all of his claims were procedurally

-6-

barred.  In its brief discussing the single issue on which we have granted COA, the state does not argue procedural bar, but addresses the ineffective assistance issue solely on the merits.  We will therefore proceed to the merits of the ineffective assistance issue.    *See James v. Gibson*  , 211 F.3d 543, 557 (10th Cir. 2000).  We review the district court's conclusions of law de novo, and accept its findings of fact unless they are clearly erroneous.    *Hickman v. Spears*  , 160 F.3d 1269, 1271 (10th Cir. 1998).  We may not grant a writ of habeas corpus with respect to claims the state courts adjudicated on the merits, unless the adjudication of these claims "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).  It is highly doubtful and certainly debatable whether the OCCA's one sentence analysis of the ineffective assistance of counsel issue provided a sufficient analysis of the specific question before us to warrant deference.  As to the latter, the only reference in the one relevant sentence is to what Mr. Pahcheka did or did not do, whereas the question before us is whether his attorney did or did not perform adequately.  Even if we were to conclude that the OCCA did not adjudicate the ineffective assistance claim on the merits, however, and that we

-7-

owed no deference to its findings, Mr. Pahcheka has failed to meet his burden of demonstrating that his counsel was constitutionally ineffective.

In general, a criminal defendant claiming ineffective assistance of counsel must show (1) that his counsel's representation was deficient to the point that it fell below an objective standard of reasonableness, and (2) that this deficient performance prejudiced the defendant. *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984). The *Strickland* test applies to claims that counsel was constitutionally ineffective in failing to file a notice of appeal (or, as in this case, in failing to move to withdraw a guilty plea, and then file a notice of appeal). *See Roe v. Flores-Ortega*, 528 U.S. 470, 476-77 (2000); *see also United States v. Garrett*, 402 F.3d 1262, 1265 & n.4 (10th Cir. 2005). The district court found that Mr. Pahcheka failed to demonstrate that his counsel's representation was deficient. Accordingly, it did not address the prejudice prong of the analysis.

### 1. Deficient representation

Application of the "deficient representation" prong of the *Strickland* test depends upon the circumstances surrounding the failure to appeal. If the client gives specific instructions to his attorney to file a notice of appeal, and his attorney disregards these instructions, the attorney plainly has acted in a professionally unreasonable manner. *Flores-Ortega*, 528 U.S. at 477. If the defendant tells his attorney *not* to file a notice of appeal, however, the defendant

cannot later claim his attorney was ineffective in failing to do so. *Id.* A more difficult issue arises when the client has not clearly conveyed his wishes one way or the other. In such cases, we ask whether counsel had an affirmative duty to consult with the defendant concerning an appeal. Counsel has such a duty "when there is reason to think *either* (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), *or* (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." *Id.* at 480 (emphasis added). There is no evidence that Mr. Pahcheka ever specifically instructed his counsel to withdraw his guilty plea and to perfect an appeal. Mr. Pahcheka is therefore entitled to relief only if his counsel had a duty to consult with him concerning withdrawal of his plea and an appeal. "In making this determination, courts must take into account all the information counsel knew or should have known." *Id.*

### a. Would a rational defendant have wanted to appeal?

The first set of circumstances triggering a duty on the part of Mr. Pahcheka's counsel to consult with him concerning an appeal would arise if counsel had reason to think that a rational defendant in Mr. Pahcheka's circumstances would have wished to appeal. "[A] highly relevant factor in this inquiry will be whether the conviction follows a trial or a guilty plea, both because a guilty plea reduces the scope of potentially appealable issues and

because such a plea may indicate that the defendant seeks an end to judicial proceedings." *Id.* Mr. Pachecka, of course, did plead guilty. "Even in cases when the defendant pleads guilty, [however,] the court must consider such factors as whether the defendant received the sentence bargained for as part of the plea and whether the plea expressly reserved or waived some or all appeal rights." *Id.*

Here, Mr. Pahcheka faced a sentence of four years to life and a fine of $25,000 to $50,000; he received precisely the sentence he bargained for, fifteen years and a fine at the bottom end of the range, $25,000. Mr. Pahcheka did not waive his right to appeal as part of the plea, but he was informed by the sentencing court of his appeal rights and the deadlines applicable to taking an appeal. The fact that he pled guilty and received the sentence bargained for weighs against an obligation on the part of his attorney to consult with him regarding an appeal.

Notwithstanding a guilty plea, a defendant might want to appeal if he wished to present nonfrivolous issues to an appellate court. *Flores-Ortega*, 528 U.S. at 480. Our inquiry concerning the merits of such issues, however, cannot occur in a vacuum. We must remain at all times focused on the ultimate question: whether an attorney, in the position of Mr. Pahcheka's counsel, would have reason to believe that a *rational* defendant in Mr. Pahcheka's situation would have wanted to appeal, given all of the facts surrounding the entry of his plea. *Id.*

-10-

In assessing whether it was reasonable for an attorney to consult with his client about withdrawing a recently negotiated and highly favorable plea, it would be improper for us to second-guess an attorney's evaluation of potential issues, particularly on a cold record. *Cf. Cargle v. Mullin*, 317 F.3d 1196, 1202 (10th Cir. 2003) ("[D]eferential consideration must be given to any professional judgment involved in [the] omission [of meritorious but non-compelling issues on appeal]."). It is not our task to reach a hypothetical, hermetically isolated evaluation of the merits of potential appellate issues. It should be emphasized that under *Flores-Ortega* it is counsel's responsibility to evaluate the available appellate issues. Such an evaluation will inevitably be painted on a canvas consisting of all the facts of the case, including in this case the paramount fact that his client had just entered a satisfactory guilty plea and had not expressed any previous desire to withdraw the plea. In the circumstances of this case, counsel was required to determine whether any potential appellate issues were of such moment that they would have caused a rational defendant to wish to abandon his previous course of action, involving termination of judicial proceedings and acceptance of the benefits of a plea bargain agreement, in favor of a speculative and risky prolongation of such proceedings through withdrawal of the plea. Counsel's strategic wisdom and plain common sense had a significant role to play in this inquiry. *Cf. Smith v. Robbins,* 528 U.S. 259, 288 (2000) ("[A]ppellate

-11-

counsel who files a merits brief need not (and should not) raise every nonfrivolous claim.").

In conducting this evaluation, counsel was required to take into account all information reasonably known to him. This surely includes, in addition to information relating to the hypothetical merits of possible appellate issues, information concerning the general posture of his client's case, the favorableness of the plea agreement, and the possible consequences if it were set aside. This evaluation of whether a reasonable defendant would wish to appeal, in light of the client's recent decision to enter a guilty plea and the risks and challenges involved, involves significant consideration of strategic factors. We always presume, absent a strong showing to the contrary, that counsel has made valid strategic choices. *See Bullock v. Carver*, 297 F.3d 1036, 1046-47 (10th Cir. 2002).

In nearly every case, issues arise that could potentially be presented to an appellate court for review. Indeed, one reason favorable terms are offered to a defendant in plea negotiations lies in the recognition of his right to put the state to its proof by asserting whatever legal and factual issues he may have. Acceptance of a guilty plea represents the defendant's willingness to forego such assertion in favor of a speedy and favorable resolution to criminal proceedings. *See Flores-Ortega*, 528 U.S. at 480 (noting guilty plea "may indicate that the

defendant seeks an end to judicial proceedings"). In such cases, it would be a meaningless exercise to require an attorney, on pain of being considered constitutionally ineffective, to contact his client about withdrawing a plea merely because there are issues that could hypothetically, in some Platonic sense, be considered "non-frivolous." Such a mechanistic approach, in fact, would perilously approach the "per se" and "almost always" tests for an attorney's duty to contact his client that the Supreme Court expressly rejected in *Flores-Ortega*. *See id.* at 480-81.

Mr. Pahcheka has given us nothing from which to second-guess his counsel's decisions in this case. He (through counsel appointed for this appeal) has not even presented us with the transcript of the evidentiary hearing at which he and his trial counsel testified. *See generally* Fed. R. App. P. 10(b) (placing duty on appellant to provide transcript of district court proceedings.) Under the circumstances, we simply have no basis from which to determine that his counsel did not make an acceptable strategic judgment, based on a reasonable evaluation of the issues, that he was not required to contact Mr. Pahcheka concerning an appeal.

With the foregoing principles in mind, we turn to the specific issues Mr. Pahcheka claims he would have liked to raise on appeal. We find these issues meritless. There is nothing about them, given the facts of this case, that would

have alerted counsel that he needed to consult with Mr. Pahcheka concerning an appeal. First, there is no merit to his argument that his guilty plea to one count of trafficking in a controlled dangerous substance lacked a factual basis. The crime alleged in the amended indictment required the state to prove that Mr. Pahcheka "[k]nowingly distribute[d], manufacture[d], [brought] into this state or possess[ed] . . . twenty (20) grams or more of a mixture or substance containing a detectable amount of amphetamine or methamphetamine." Okla. Stat., tit. 63 § 2-415(B)(1), (C)(4)(a). In the guilty plea, Mr. Pahcheka recited that "[w]e had a large Quantity of Meth in our possession in Comanche County[,] Oklahoma." R., Vol. II, doc. 46, ex. 6, at 3.

In addition to the recitation in his guilty plea, the evidence presented at the preliminary hearing provided a factual basis for acceptance of the plea, on which the state district court could rely. The house in which Mr. Pahcheka was arrested was full of equipment for manufacturing methamphetamine, and officers found well in excess of twenty grams of a substance containing finished methamphetamine in a truck outside. There is no merit to Mr. Pahcheka's contention that there was no factual basis for his plea.

There is also no merit to Mr. Pahcheka's contention that his trial counsel was ineffective for failing to explain the elements of the trafficking charge, or that his plea was not knowing and voluntary because he did not know that the

trafficking charge required possession of at least twenty grams of methamphetamine. The constitutional prerequisites of a valid plea may be satisfied where the record reflects either that the nature of the charge and the elements of the crime were explained to the defendant by his own, competent counsel, or by the court. *Bradshaw v. Stumpf*, 125 S. Ct. 2398, 2405 (2005). Here, the twenty-gram element was discussed at length by the trial judge, the prosecutor, and Mr. Pahcheka's counsel, within his presence, during the preliminary hearing. Moreover, in his written guilty plea Mr. Pahcheka stated under oath that he had read the information, which presented the elements of the offense; had discussed the charges with his counsel; and had committed the acts as charged in the information. Mr. Pahcheka fails to substantiate his claims that his counsel was ineffective or that his plea was not knowing and voluntary.

Mr. Pahcheka has further indicated that his counsel should have consulted with him because he could have raised a nonfrivolous claim that the state court lacked jurisdiction to prosecute him for the offense. He contends that he is an Indian and the alleged offense took place in "Indian Country." For the reasons stated by the magistrate judge in his well-reasoned discussion of this issue, *see* R., Vol. I, doc. 22, at 12-14, as well as the state trial court's conclusions regarding jurisdiction prior to the entry of his guilty plea, there is no merit to this contention.

Additionally, as we have noted, this issue cannot simply be considered in a vacuum. Mr. Pahcheka's counsel was surely aware that the state district court, having reviewed the powerful evidence presented from the Bureau of Indian Affairs concerning the non-Indian status of the land involved, ruled decisively against Mr. Pahcheka on this issue. Notwithstanding counsel's preliminary indications about taking this issue up on appeal, he signed a plea agreement on behalf of his client a few months later, which included a factual basis for the plea stating that the offense had occurred "in Comanche County, Oklahoma." R., Vol. I, doc. 15, ex. "L," at 3. It is reasonable to assume that, faced with hard evidence, counsel determined that his previous jurisdictional argument, while worth raising at the preliminary hearing, stood no chance of achieving a favorable result on appeal. Alternatively, counsel may have used the threat of a jurisdictionally based appeal to wring a more favorable sentence out of the state on behalf of his client. Without the evidentiary hearing transcript, we cannot know exactly what went on in the plea negotiations, but in its absence neither can we say that counsel acted unreasonably in failing to conclude that his client might have wanted to appeal based on this dubious jurisdictional issue.

We conclude that Mr. Pahcheka has failed to show that his counsel should have been aware that a rational defendant, under his circumstances, would have desired an appeal.

### b. Did Mr. Pahcheka demonstrate an interest in appealing?

The district court concluded that there was no "indication from Petitioner that he wished to appeal or withdraw his guilty plea." R., Vol. II, doc. 47, at 9. It noted that "Petitioner failed to demonstrate that his trial counsel actually received any communication from Petitioner following the entry of his guilty plea." *Id.* We begin with Mr. Pahcheka's claim that counsel was ineffective for failing to accept the collect telephone calls Mr. Pahcheka allegedly made to him during the ten-day period for withdrawal of his plea. Counsel testified that he did not take the calls because "he has a general policy of refusing all collect telephone calls from indigent clients due to the unreimbursable costs associated with the calls." *Id.* at 8 n.10. Counsel was not necessarily aware that the calls related to an attempt by Mr. Pahcheka to withdraw his plea. In fact, there is no indication that counsel had any idea what these calls were about. Moreover, once it became clear, still within the ten-day period, that counsel was not going to accept collect telephone calls from Mr. Pahcheka, it became incumbent upon him, if he wished to change course and litigate his issues rather than relying on a guilty plea, to find some other means of notifying counsel of this intention.

Mr. Pahcheka contends that he did try to notify his attorney by other means of his second thoughts about the course of action he had chosen. He states that he placed a letter to his attorney, requesting that counsel come visit him to discuss

his guilty plea, in the Comanche County Jail's internal mail system on the eighth day following the entry of his guilty plea. It is undisputed that counsel never received this letter. Mr. Pahcheka also claims to have placed a letter to the trial judge concerning his guilty plea at around the same time in the same internal mail system. It is undisputed that the trial judge did not receive that purported letter, either.

Thus, Mr. Pahcheka claims to have mailed two separate letters, addressed to two different addressees, at around the same point in time. Yet each of these two addressees has denied receiving the letter that Mr. Pahcheka purportedly sent. He offers nothing to overcome the evidence of non-receipt. The reasonable inference is that the letters were not in fact sent as alleged.

Moreover, the information he provides about these purported letters is barren of detail and entirely conclusory. The record not only contains no copy of the letters, [2] there is no indication that Mr. Pahcheka discussed the letters or the

---

[2] In state court, Mr. Pahcheka filed an affidavit purportedly disclosing the contents of the letters. R., Vol. I, doc. 15, ex. "A" at 14. The alleged contents, as detailed in his affidavit, however, consist entirely of rather sophisticated legal argument. The affidavit discloses no request for any form of relief, including withdrawal of the plea, and no request for counsel to visit with Mr. Pahcheka about withdrawing his plea or taking an appeal. If Mr. Pahcheka had legal resources sufficient to make this sort of sophisticated argument in a letter to his counsel and the court, one must wonder why he did not simply file a pro se motion to withdraw his plea after his counsel rejected his collect telephone calls.

lack of response to them with anyone, such as a fellow inmate, and no indication of a complaint to anyone at the Comanche County Jail about the alleged lack of response from the letters.    *Compare Treff v. Galetka*, 74 F.3d 191, 193 (10th Cir. 1996) (noting grievances filed by prisoner who claimed Utah state prison interfered with mail, based on lack of response received by prisoner).  The letters are mere phantoms, on which we are asked to predicate a claim of ineffective assistance of counsel rising to constitutional dimensions.  On this record, we cannot draw such an inference.  The evidence presented, which at best consists of argumentative, conclusory allegations, fails to reach the point of rational debate.

## 2.  Prejudice

Having concluded that Mr. Pahcheka failed to establish deficient performance by his counsel, we need not decide whether he was prejudiced by his counsel's failure to consult with him concerning an appeal.

The judgment of the district court is AFFIRMED.  Mr. Pahcheka's motion to proceed in forma pauperis is granted.  With the exception of the issue on which COA previously was granted, we deny COA on the issues raised in Mr. Pahcheka's pro se opening brief and in his application for COA.

Entered for the Court


Stephen H. Anderson
Circuit Judge